Dear Mr. Coulon:
You have requested an opinion of the Attorney General regarding the scope and effect of Louisiana law as it relates to the collateralization of deposits made by individual schools, related clubs, and associations. You state that your school district is currently developing a site-based purchasing program, whereby budgeted funds are transferred to the schools to make purchases. Current board policy requires each school to maintain one operating checking account for system-provided and activity funds. You further question whether student activity and/or booster club funds constitute public funds which require collateralization.
Act No. 1066 of the 1990 Regular Session of the Louisiana Legislature, effective July 27, 1990, enacted LSA-R.S. 17:414.3. It provides, in pertinent part, the following:
 "A. The principal of every public elementary and secondary school shall maintain a school fund as provided for in this Section for the management of any money which accrues to benefit his school. The money provided by the state or the city or parish school system for support of the regular instructional program or the school facility shall not be included in the school fund provided for in this Section; such money shall be managed as directed by the agency from which it is received.
 B. (1) The monies in the school fund shall be deposited in a single bank account preferably interest-bearing, on which checks may be drawn. The bank shall be selected in the manner required by the policy or direction of the school board or, if there is no policy or direction, at the discretion of the principal.
 (2) Separate records or ledgers shall be maintained by the principal, or his designee from among the school staff, for each of the following sources of deposits into the school fund account:
 (a) Each club, organization, association, class, athletic team, or other organizational unit within the school, the existence of which complies with school and school board policy; the membership of which is either students, faculty, or employees of the school; and which generates money by collecting dues, conducting fund raisers, charging admission, or some other money generating activity for a purpose which the entity intends to control.
 (b) Each donation made to the school by an entity outside the school, whether it be a parents club, community, business, or civic organization, or other donor, when such donation is made for a specific or restricted use or purpose.
 (c) All donations made by an entity referred to in Subparagraphs (a) and (b) of this Paragraph as well as all monies raised by the school population generally which are unrestricted and which are intended for discretionary use to benefit the school, its students, faculty, employees, programs, or facilities.
 (d) All monies raised in a school-wide effort for a specific use or purpose.
 (e) Any other money source, temporary or permanent, which is identifiable, approved by the principal, and has a need to maintain a record or ledger.
* * *
 (e)(i) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(a), (b), (d), and (e) shall be used according to the purpose for which it was generated or for the purposes selected by the depositing entities, provided such expenditures are approved by the principal as indicated by his signature on checks for withdrawals.
 (ii) Money deposited in the school fund pursuant to R.S. 17:414.3(B)(2)(c) may be expended at the discretion of the principal provided such expenditures are for the benefit of all or any of the school's students, faculty, staff, facility, or program and provided the ledger reflects the expenditure.
* * *
 E. Nothing in this Section shall be construed to permit an expenditure that is otherwise prohibited by law." (Emphasis added.)
As can be seen from the above, the management and expenditure of individual school funds is now statutorily controlled. It should be noted that money provided by the state, the city, or parish school system should not be included in the school fund. To the extent your current board policy requires each school to maintain one operating checking account for system-provided and activity funds, it should be amended to conform to the legislative mandate that school activity and donated funds be maintained in a separate account. I am enclosing a copy of LSA-R.S. 17:414.3 for your reference and convenience. I am also enclosing copies of Attorney General Opinion Nos. 90-468, 90-609, and 92-79, all of which discuss the ramifications of Section 414.3.
The issue of collateralization is controlled by LSA-R.S.39:1211, et seq. Section 1221 enumerates the types of security which are acceptable for purposes of the collateralization of public funds. Section 1225 provides that the amount of the security shall, at all times, be equal to one hundred percent (100%) of the amount on deposit to the credit of the depositing authority, except that portion of the deposits insured by a governmental agency (e.g., the Federal Deposit Insurance Corporation).
While the collateralization requirements are located in the body of laws regarding fiscal agency, we believe they are also applicable to school funds which are deposited pursuant to LSA-R.S. 17:414.3(B)(1), even though the financial institution may not be a designated fiscal agent. The public policy of legal provisions requiring collateralization is that public funds be protected and secured from loss by one hundred percent (100%) collateralization by the fiscal institution involved. The status of the bank as a fiscal agent is not of the essence to the duty to collateralize, but rather the depositing of the public funds into the custody of that bank. Thus, the duty to collateralize is triggered when public funds are deposited. We focus now upon the nature of the funds in question.
As previously noted, the monies comprising this school fund emanate from organizational units within the school and donations from other organizations (e.g., civic, business, parents) outside the school. Once received by the school, the funds are deposited in a single account, with separate ledgers being maintained for each of the five possible sources of funding. Withdrawals, investments, and use of the funds must conform to the statutory requirements set forth in Section 414.3. While the principal and/or his appropriate designee have some discretion over the purposes for which the unrestricted funds may be spent, this discretion is not unfettered.
Attorney General Opinion No. 90-609 correctly opined:
 "The statute limits the principal's discretion to expenditures which benefit the educational purposes of the school, and La. Const. Art. VII, Section 14 (1974) prohibits any gratuitous expenditures of school funds for non-educational purposes, which are either legally unauthorized or non-mandated."
Considering the above factors, we must conclude that the monies comprising the school fund are clearly public in nature. Conversely, the funds generated by organizations outside the school are private in nature. While the private funds are not subject to the state's collateralization requirements, the school funds clearly are. Accordingly, to the extent the monies in the school fund are not insured by a governmental agency, they must be fully collateralized.
It is our understanding from a telephone conversation with representatives of the FDIC that the individual school fund accounts are separately insured. However, we recommend that you request a formal written opinion from the FDIC regarding this issue.
Should you have any additional questions concerning this matter, please do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb Enclosures 0090R